21 Civ. 8452 (LAK)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

NICOLLE BESUDEN,

Plaintiff,

-against-

THE CITY OF NEW YORK, ET. AL.,

Defendants.

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' PARTIAL MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

*HON. SYLVIA O. HINDS-RADIX*
*Corporation Counsel of the City of New York*
*Attorneys for Defendants*
*100 Church Street, 3rd Floor*
*New York, NY 10007*

*By: KellyAnne Holohan*
*Tel: (212) 356-2249*
*E-mail: kholohan@law.nyc.gov*

*Felix De Jesus*
*Tel: (212) 356-2377*
*E-mail: felixdej@law.nyc.gov*

# TABLE OF CONTENTS

TABLE OF CONTENTS..............................................................................................................i

TABLE OF AUTHORITIES .....................................................................................................iii

PRELIMINARY STATEMENT ................................................................................................1

RELEVANT STATEMENT OF FACTS ...................................................................................2

   July 24, 2020 ........................................................................................................................2

   July 28, 2020 ........................................................................................................................2

   July 30, 2020 ........................................................................................................................5

   August 11, 2020 ...................................................................................................................6

   September 29, 2020 ..............................................................................................................7

   October 5, 2020 ..................................................................................................................10

   October 17, 2020 ................................................................................................................10

   October 25, 2020 ................................................................................................................11

   November 17, 2020 ............................................................................................................12

   December 11, 2020 ............................................................................................................12

STANDARD OF REVIEW ......................................................................................................13

ARGUMENT ...........................................................................................................................13

   POINT I ..............................................................................................................................14

      PLAINTIFF'S FALSE ARREST CLAIM FAILS AS A MATTER OF LAW ..................14

      A.   There was Probable Cause to Arrest Plaintiff on July 28, 2020................................15

      B.   There was Probable Cause to Arrest Plaintiff on September 29, 2020 .....................16

      C.   There was Probable Cause to Arrest Plaintiff on October 25, 2020..........................17

   POINT II .............................................................................................................................19

      PLAINTIFF FAILS TO MEET THE REQUIRED ELEMENTS FOR MALICIOUS
      PROSECUTION UNDER STATE AND FEDERAL LAW.........................................19

   POINT III ...........................................................................................................................20

      PLAINTIFF WAS NOT SUBJECTED TO EXCESSIVE FORCE ....................................20

   POINT IV ...........................................................................................................................21

      CITY DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY..........................21

   POINT V ............................................................................................................................23

      PLAINTIFF'S IIED CLAIM FAILS AS A MATTER OF LAW .......................................23

   POINT VI............................................................................................................................24

PLAINTIFF'S FIRST AMENDMENT CLAIMS FAIL ....................................................... 24

AS PLAINTIFF'S SPEECH WAS NOT "CHILLED" ....................................................... 24

POINT VII ................................................................................................................................ 26

PLAINTIFF'S *MONELL* CLAIM FAILS AS A MATTER OF LAW ................................ 26

 A. Plaintiff Cannot Proceed on a Monell Claim as to Three Incidents as There is No
Constitutional Violation ...................................................................................................... 28

 B. Plaintiff's Complaint Fails to Adequately Allege A Municipal Policy or Practice.... 29

POINT VIII ............................................................................................................................... 33

PLAINTIFF'S STATE LAW CLAIMS ALSO FAIL AS A MATTER OF LAW .............. 33

POINT IX .................................................................................................................................. 34

A STAY OF DISCOVERY IS WARRANTED ................................................................... 34

CONCLUSION ......................................................................................................................... 36

# TABLE OF AUTHORITIES

## Cases

*Addona v. D'Andrea*, 692 F. App'x 76, 78 (2d Cir. 2017) ......................................................... 2

*An v. City of New York*, 2017 U.S. Dist. LEXIS 84364, at *8 (S.D.N.Y. June 1, 2017) ............. 28

*Angevin v. City of N.Y.*, 204 F. Supp. 3d 469, 480 (E.D.N.Y. 2016) .......................................... 20

*Aquino v. City of New York*, 16 Civ. 1577 (GHW), 2017 U.S. Dist. LEXIS 10436, at *7-8
    (S.D.N.Y. Jan. 25, 2017) ...................................................................................... 26, 27, 32

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2008) .............................................................................. 13

*Banushi v. City of New York*, 09 Civ. 2937 (KAM), 2010 U.S. Dist. LEXIS 109903, at *35-37
    (E.D.N.Y. Oct. 15, 2010) (KAM) ........................................................................................ 30

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) .................................................. 13, 14

*Bender v. City of N.Y.*, 2011 U.S. Dist. LEXIS 103947, at *18 (S.D.N.Y. 2011) ....................... 21

*Berg v. 505-23 Bar Inc.,* 2012 U.S. Dist. LEXIS 86622, at *24 (S.D.N.Y. 2012) ...................... 19

*Boelter v. Hearst Communs., Inc.*, No. 15-CV-03934 (AT), 2016 U.S. Dist. LEXIS 12322, at *13
    (S.D.N.Y. Jan. 28, 2016) ..................................................................................................... 34

*Bradley v. City of New York*, 08 Civ. 1106 (NGG), 2009 U.S. Dist. LEXIS 51532, at *8-*9
    (E.D.N.Y. June 18, 2009 ...................................................................................................... 29

*Brodeur v. City of New York*, No. 99 Civ. 661 (WP), 2002 U.S. Dist. LEXIS 4500, at *7
    (S.D.N.Y. Mar. 18, 2002) .................................................................................................... 29

*Chanko v. Am. Broad. Cos.*, 27 N.Y.3d 46, 56 (N.Y. 2016) ...................................................... 24

*City of Canton v. Harris*, 489 U.S. 378, 388 (1989) .................................................................. 27

*Claudio v. Sawyer*, 675 F. Supp. 2d 403, 408 (S.D.N.Y 2009) ................................................. 28

*Connick v. Thompson*, 563 U.S. 51, 60 (2011) .......................................................................... 27

*County of Sacramento v. Lewis,* 523 U.S. 833, 846 1998) ........................................................ 21

*Cuevas v. City of New York*, 07 Civ. 4169 (LAP), 2009 U.S. Dist. LEXIS 114984, at *10
    (S.D.N.Y. Dec. 7, 2009) ...................................................................................................... 30

*Curley v. Village of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001) .................................................... 25

*Devito v. Barrant*, No. 03-CV-1927 (DLI) (RLM), 2005 U.S. Dist. LEXIS 22444, at *30
    (E.D.N.Y. Aug. 23, 2005) .................................................................................................... 23

*Dwares v. City of New York*, 985 F.2d 94, 100 (2d Cir. 1993) .................................................. 30

*Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004) ................................................................. 22

*Farmer v. Cty. of Westchester*, 18 Civ. 2691 (NSR), 2021 U.S. Dist. LEXIS 175597, at *31
    (S.D.N.Y. Sep. 15, 2021) .................................................................................................... 29

*Figueroa v. Mazza*, 825 F.3d 89, 99 (2d Cir. 2016) .................................................................. 14

*Fink v. Inc. Vill. Of E. Hampton,* 2021 U.S. Dist. LEXIS 233372, at *31 (E.D.N.Y. 2021) ....... 21

*Franks v. City of New York*, 13 Civ. 5264 (KAM), 2017 U.S. Dist. LEXIS 49532, at *14
    (E.D.N.Y. Mar. 31, 2017) .................................................................................................... 30

*Fusco v. Fusco*, 859 N.Y.S.2d 894 (N.Y. Sup. Ct. 2008) .......................................................... 24

*Galgano v. Cty. of Putnam*, No. 16-CV-3572 (KMK), 2020 U.S. Dist. LEXIS 116682, at *30-31
    (S.D.N.Y. July 2, 2020) ....................................................................................................... 28

*Graham v. Connor*, 490 U.S. 386, 394-95 (1989) ..................................................................... 21

*Hansel v. Sheridan*, 991 F. Supp. 69, 75 (N.D.N.Y. 1998) ....................................................... 23

*Holmes v. City of N.Y.,* 2018 U.S. Dist. LEXIS 53419, at *10 (S.D.N.Y. 2018) ........................ 16

*Horvath v. Daniel*, 423 F. Supp.2d 421, 423 (S.D.N.Y. 2006) ............................................... 33

*Johnson v. N.Y. Univ. Sch. of Educ.*, 205 F.R.D. 433, 434 (S.D.N.Y. 2002) ............................. 35

*Kanowitz v. Broadridge Fin. Solutions Inc.*, No. 13-CV-649 (DRH) (AKT), 2014 LEXIS 46518 at *15-*16 (E.D.N.Y. Mar. 31, 2014) ................................................................. 35

*Kee v. City of N.Y.*, 12 F.4th 150, 162 (2d Cir. 2021) .................................................... 20

*Kuck v. Danaher*, 600 F.3d 159, 168 (2d Cir. 2010) ...................................................... 25

*Lauer v. City of N.Y.*, 240 A.D.2d 543, 659 N.Y.S.2d 57, 58 (2nd Dep't 1997) .......................... 24

*Leibovitz v. City of New York*, 15 Civ. 1722 (KAM), 2015 U.S. Dist. LEXIS 84995, at *12-14 (E.D.N.Y. June 30, 2015) ........................................................................... 30

*Lener v. Hempstead Pub. Sch.*, 55 F. Supp. 3d 267, 283 n. 14 (E.D.N.Y. 2014) ......................... 28

*Lennon v. Miller*, 66 F.3d 416, 420-21 (2d Cir. 1995) ................................................... 22

*Lewis v. City of Newburgh*, No. 20-CV-7973 (CS), 2021 U.S. Dist. LEXIS 242494, at *20 (S.D.N.Y. December 20, 2021) .................................................................... 28, 29

*Lynch v. City of Mount Vernon*, 567 F. Supp. 2d 459, 467 (S.D.N.Y. 2008) .............................. 21

*McLeod v. Llano*, 17 Civ. 6062 (ARR), 2019 U.S. Dist. LEXIS 39925, at *19 (E.D.N.Y. Mar. 12, 2019) ............................................................................................... 31

*McNamee v. Clemens*, 762 F. Supp. 2d 584, 609 (E.D.N.Y. 2011) ....................................... 24

*Mercado v. City of New York*, 08 CV 2855 (BSJ)(HP), 2011 U.S. Dist. LEXIS 140430, at *23 (S.D.N.Y. Dec. 5, 2011) ........................................................................... 27

*Monahan v. City of New York*, 20-CV-2610 (PKC), 2022 U.S. Dist. LEXIS 59124 (S.D.N.Y. March 30, 2022) .................................................................................... 32

*Monell v. Dep't of Social Services*, 436 U.S. 658, 663 n.7, 694-95 (1978) ............................ 27

*Moore v. City of N.Y.*, 219 F. Supp. 2d 335, 339 (E.D.N.Y. 2002) ...................................... 23

*Murphy v. American Home Prods. Corp.*, 58 N.Y.2d 293, 303 (1983) ..................................... 24

*Murphy v. Lynn*, 118 F.3d 938, 947 (2d Cir. 1997) ....................................................... 19

*Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006) ................................................... 19

*Parisi v. Suffolk County*, No. 04 Civ. 2187 (ENV) (ETB), 2009 U.S. Dist. LEXIS 112388, *29-30 (E.D.N.Y. Nov. 20, 2009) ....................................................................... 22

*Pearson v. Callahan*, 555 7.S. 223, 231 (2009) (quoting *Hunter v. Bryant* 502 U.S. 224) .......... 22

*Pembaur v. City of Cincinnati*, 475 U.S. 469, 483-84 (1986) ........................................... 27

*People v. Carter*, 162 Misc.2d 643 (N.Y. Crim. Ct. 1994) ............................................... 16

*People v. Hickson*, No. 570079/13, 2015 N.Y. Misc. LEXIS 4634, at *1 (N.Y. App. Term, 1st Dep't Dec. 22, 2015) ............................................................................... 16

*Phelps v. Kapnolas*, 308 F.3d 180, 184 (2d Cir. 2002) .................................................. 13

*Plair v. City of New York*, 789 F. Supp. 2d 459, 469 (S.D.N.Y. 2011) .................................. 30

*Rattner v. Planning Comm'n of Vill. of Pleasantville*, 156 A.D.2d 521, 548 N.Y.S.2d 943 [**6] (2d Dep't 1989) ............................................................................. 33

*Rivera v. City of N.Y.*, 392 F.Supp.2d 644, 657 (S.D.N.Y. 2005) ....................................... 24

*Rodriguez v. Winski*, 973 F. Supp. 2d 411, 425 (S.D.N.Y. 2013) ........................................ 27

*Rohman v. N.Y. City Transit Authority*, 215 F.3d 208, 215-216 (2d Cir. 2000) .......................... 20

*Romero v. City of N.Y.*, 839 F. Supp. 2d 588, 629 (E.D.N.Y. 2012) ..................................... 24

*Rowell v. City of N.Y.*, 16 Civ. 6598 (AJN), 2018 U.S. Dist. LEXIS 168203, at *20 (S.D.N.Y. Sept. 28, 2018) ................................................................................................................... 31

*Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006) ........................................ 28

*Smart v. City of N.Y.*, No. 08 Civ. 2203 (HB), 2009 U.S. Dist. LEXIS 30241, at *13-*15 (S.D.N.Y. Apr. 1, 2009) ..................................................................................................... 16

*Smith-Hunter v. Harvey,* 95 N.Y.2d 191, 195 (N.Y. 2000) .............................................. 20

*Spencer Trask Software & Info. Servs., LLC v. RPost Int'l Ltd.*, No. 02-CV-01276 (PKL), 206 F.R.D. 367, 368, 2002 U.S. Dist. LEXIS 6021 at 368 (S.D.N.Y. Apr. 8, 2002) .................... 35

*Swinton v. City of New York*, 08 Civ. 3278 (RJD)(RML), 2011 U.S. Dist. LEXIS 32384, at *15-17 (E.D.N.Y. Mar. 28, 2011) ............................................................................................... 30

*U.S. v. Scopo*, 19 F. 3d 777, 782 (2d Cir. 1994) ............................................................. 16

*Vippolis v. Vill. of Haverstraw*, 768 F.2d 40, 44 (2d Cir. 1985) ...................................... 27

*Wieder v. City of N.Y.*, 569 F. App'x 28, 29 (2d Cir. 2014) ............................................ 19

## Statutes

42 U.S.C. § 1983 ............................................ 1, 2, 5, 10, 11, 12, 13, 14, 17, 18, 19, 20, 21, 23, 26

A.C. § 10-179(a)(5) ............................................................................................................ 15, 16

A.C. § 10-179(b) ...................................................................................................................... 15

C.P.L. § 170.30(1)(e) .............................................................................................................. 10

N.Y. Gen. Mun. Law § 50-e .................................................................................................... 33

N.Y. Gen. Mun. Law § 50-i ..................................................................................................... 33

P.L. § 145.00(1) .................................................................................................................. 18, 19

P.L. § 155.05 ............................................................................................................................ 18

P.L. § 155.25 ...................................................................................................................... 18, 19

P.L. § 205.30 ............................................................................................... 5, 9, 15, 17, 18

P.L. § 240.10 ...................................................................................................................... 17, 18

P.L. § 240.20 ............................................................................................................................ 15

P.L. § 240.20 ..................................................................................... 5, 12, 15, 16, 18, 19

P.L. § 240.20(5) .................................................................................................................. 15, 16

P.L. § 240.26 ............................................................................................................................ 18

P.L. § 70.15(1) .................................................................................................................... 15, 18

P.L. § 70.15(2) .......................................................................................................................... 17

P.L. § 70.15(4) .................................................................................................................... 15, 18

P.L. § 70.15(4) .......................................................................................................................... 18

P.L. § 80.05(1) .................................................................................................................... 15, 18

P.L. § 80.05(2) .......................................................................................................................... 17

P.L. § 80.05(4) .................................................................................................................... 15, 18

P.L. § 80.05(4) .......................................................................................................................... 18

R.C.N.Y. § 1-03(a)(3) ............................................................................................................... 26

R.C.N.Y. § 1-03(c)(3) ............................................................................................................... 26

R.C.N.Y. § 4-12(o)(1) ......................................................................................................... 15, 16

R.C.N.Y. § 1-03(a)(1) ............................................................................................................... 26

**Rules**

Fed. R. Civ. Pro. 12(b)(6) ................................................................. 1, 13
Fed. R. Civ. Pro. 42(b) ........................................................................ 32

**Constitutional Provisions**

U.S. Const. Art. III, Section 2 .............................................................. 28

**Other Authorities**

Restatement [Second] of Torts § 46, Comment d ....................................... 24

## PRELIMINARY STATEMENT

Plaintiff Nicolle Besuden ("Plaintiff") commenced this action pursuant to 42 U.S.C. § 1983 alleging, *inter alia,* that defendants violated her constitutional rights by detaining or arresting her without probable cause, by unlawfully "surveilling" her, and by subjecting her to excessive force in that she was pushed, tackled, or otherwise physically handled causing her various injuries including a fractured elbow. *See generally* Pl.'s Am. Compl., annexed to the Decl. of Felix De Jesus, dated August 15, 2022, as Exhibit "A." On or about June 2, 2022, Plaintiff filed a First Amended Complaint (hereinafter "FAC"). Plaintiff brings eight causes of action against defendants. *See generally* Ex. A.

Defendants City of New York, former Mayor Bill de Blasio, former New York City Police Department ("NYPD") Commissioner Dermot Shea, former NYPD Chief Terence Monahan, Captain (hereinafter "Cpt.") Robert O'Hare, NYPD Deputy Inspector (hereinafter "D.I.") Elias Nikas, NYPD Cpt. Julio Delgado, NYPD Cpt. Michael John, Officer Jian Yu, Officer Patrick Connolly, Officer Cardenas, and Officer Edward Casaceli (collectively, "City Defendants") now move pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("FRCP") for dismissal of some of the claims for failure to state a claim upon which relief can be granted on the grounds that: (1) Plaintiff's false arrest and malicious prosecution claims as to the July 28, 2020, September 29, 2020, and October 25, 2020[1] incidents fail because probable cause existed to arrest and prosecute Plaintiff; (2) Plaintiff's First Amendment claims fail because the FAC does not adequately allege that her speech was "chilled;" (3) Plaintiff fails to plausibly allege municipal liability; (4) Plaintiff fails to adequately plead intentional infliction of emotional distress (hereinafter "IIED"), assault, and battery; (5) Plaintiff was not subjected to any force let alone excessive force during the course

---

[1] Plaintiff incorrectly alleges that the eighth date of incident occurred on October 26, 2020. Based on BWC, as detailed below and attached as exhibits to the Declaration of Felix De Jesus, the correct date is October 25, 2020.

of the arrests on July 28, 2020, September 29, 2020, and October 25, 2020; (6) City Defendants are entitled to qualified immunity; and (7) Plaintiff failed to comply with the conditions precedent for suit related to the July 28, 2020, July 30, 2020, August 11, 2020, November 17, 2020, and December 11, 2020 incidents and, therefore, she cannot bring any state law claims.

## RELEVANT STATEMENT OF FACTS[2]

Plaintiff initiated the instant action on October 29, 2021 alleging various claims regarding ten dates of incidents. The facts of those incidents are discussed below.

### July 24, 2020

Plaintiff claims that, on July 24, 2020, while at Foley Square, New York ("N.Y.") during a march, unnamed defendant Police Officer (hereinafter "P.O.") John Doe 1 and P.O. John Doe 2, hit Plaintiff with batons, causing her to suffer a fractured elbow. *See* Ex. A, ¶ 24-27. Regarding this incident, Plaintiff brings the following claims against P.O. John Doe 1 and P.O. John Doe 2: (1) excessive force under 42 U.S.C. § 1983; (2) failure to intervene under 42 U.S.C. § 1983; (3) violations of free speech and freedom of assembly under the U.S. Constitution and New York State ("N.Y.S.") Constitution, and retaliation for Plaintiff exercising those rights; (4) assault under N.Y.S. law; (5) battery under N.Y.S. law; and (6) IIED under N.Y.S. law.

### July 28, 2020

On July 28, 2020, Plaintiff was at a protest in the vicinity of Madison Square Park in Manhattan, N.Y. *See* Ex. A, ¶ 28. Plaintiff's encounter with police officers in the vicinity of East 25th Street and Madison Avenue, Manhattan, N.Y. was captured on the body-worn camera video ("BWC") of several members of the NYPD.[3]

---

[2] The facts alleged in the FAC are accepted as true herein solely for the purposes of this motion.

[3] Although on a motion to dismiss the Court should accept the material facts in the allegations in a Complaint as true, as the Second Circuit has recognized, video evidence, like any other kind of evidence, can be so overwhelming that no reasonable jury could reach a conclusion that contradicts it. *See Addona v. D'Andrea*, 692 F. App'x 76, 78 (2d Cir. 2017) (citing *Scott v. Harris*, 550 U.S. 372, 380 (2005)).

According to the BWC, at approximately 6:01 p.m., Plaintiff and a few other people are on the street and non-party Sergeant (hereinafter "Sgt.") Thomas Durkin says, in sum and substance, "get out of the street" about three times. *See* BWC of Sgt. Durkin, annexed to the Decl. of Felix De Jesus as Exhibit "B," 07:27[4]-07:33.[5] In response, Plaintiff and other individuals appear to get on the sidewalk. *See* Ex. B, 7:31-7:39. An individual ("Civilian John Doe 1") yells at Sgt. Durkin while Plaintiff is standing next to Civilian John Doe 1. *See* Ex. B, 7:41-7:55. After Sgt. Durkin says, in sum and substance, "enjoy the rest of your evening," Plaintiff says, in sum and substance to Sgt. Durkin, "eat a fucking dick you piece of shit." *See* Ex. B, 7:56-8:01.

Immediately after, at approximately 6:02 p.m., Plaintiff makes a facial gesture at officers. *See* Ex. B, 8:02. Civilian John Doe 1 continues yelling at the officers. *See* Ex. B, 8:06-8:36.

At approximately 6:03 p.m., Civilian John Doe 1 starts yelling at non-party P.O. Edward Mendez. *See* Ex. B, 8:55-9:03. Plaintiff then says, in sum and substance to P.O. Mendez, "don't you dare fucking touch him." *See* Ex. B, 9:02-9:04. Plaintiff then gets close to P.O. Mendez. *See* Ex. B, 9:04-9:18. Civilian John Doe 1 continues yelling at officers, specifically P.O. Mendez, even as another individual appears to try to pull back Civilian John Doe 1. *See* Ex. B, 9:05-9:30. Officers then fall back from the sidewalk, and Plaintiff yells, in sum and substance, "fall the fuck back fall back." *See* Ex. B, 9:30-9:33. Plaintiff is again on the street, specifically on the crosswalk, and is yelling at a man in a suit. *See* Ex. B, 9:54-10:00.

At approximately 6:04 p.m., Plaintiff and several other individuals are in the street again. *See* Ex. B, 10:08-10:18. At least one vehicle is honking. *See* Ex. B, 10:38-10:42. Plaintiff yells at

---

[4] To the left of the colon is the minutes into the BWC from the beginning of the video and to the right of the colon is the seconds after that minute into the video. Thus, "7:27" refers to the portion of the BWC at seven (7) minutes and 27 seconds from the start of the video.

[5] Plaintiff can be identified as the individual wearing a black top with a long blue skirt and appears to have light pink hair at approximately 7:31.

Defendant D.I. Nikas. *See* BWC of non-party Lieutenant (hereinafter "Lt.") Michael Gaon, annexed to the Decl. of Felix De Jesus as Exhibit "C," 01:29-01:31; BWC of non-party P.O. Jackson Dagobert, annexed to the Decl. of Felix De Jesus as Exhibit "D," 01:27. Sergeant Durkin tells Civilian John Doe 1, in sum and substance, to get out of D.I. Nikas' way, and Sgt. Durkin places his hand on Civilian John Doe 1's shoulder region and Civilian John Doe 1 takes Sgt. Durkin's hand off of Civilian John Doe 1's shoulder using Civilian John Doe 1's arm. *See* Ex. B, 10:49-10:51; Ex. D, 1:31-1:32. Sergeant Durkin pushes Civilian John Doe 1 away from D.I. Nikas. *See* Ex. B, 10:51-10:52. Plaintiff then, standing in front of Sgt. Durkin says, in sum and substance, "you fucking touch him." *See* Ex. B, 10:53-10:54; Ex. C, 1:38-1:39. Sgt. Durkin then pushes Plaintiff to move her back, away from Sgt. Durkin, and states as much. *See* Ex. B, 10:54; Ex. C, 1:39-1:40.

At approximately 6:05 p.m., one of the officers says, in sum and substance, "wait for the light to change green." *See* Ex. B, 11:04-11:05. Plaintiff is in the street. *See* Ex. B, 11:07-11:15. An officer then says, in sum and substance, alright let's go they're under arrest. *See* BWC of non-party Sgt. Kevin Mulhern, annexed to the Decl. of Felix De Jesus as Exhibit "E," 00:25-00:29; Ex. B, 11:31-11:35. Shortly before being arrested, Plaintiff is still on the street, albeit close to the sidewalk. *See* Ex. B, 11:39. Sergeant Mulhern asks Plaintiff if she is going to walk off and then Sgt. Mulhern attempts to handcuff Plaintiff. *See* Ex. E, 00:33-00:52; Ex. B, 11:43-11:46; BWC of non-party P.O. Louis Delia, annexed to the Decl. of Felix De Jesus as Exhibit "F," 00:38-00:46. As P.O. Mulhern is holding Plaintiff's arms, Plaintiff kicks her legs up in the air, tosses her body side to side, and moves her left arm from her back to underneath her body. *See* Ex. F, 00:49-00:54; Ex. E, 00:53-00:59. During this interaction, Plaintiff is heard yelling. *See* Ex. E, 00:55-00:56. Officer Mulhern eventually gets a hold of Plaintiff's left arm and moves her left arm from

4

underneath her body to her back. *See* Ex. E, 01:01-01:04. In response, Plaintiff says, in sum and substance, get the fuck off me. *See* Ex. E, 01:06-01:07.

Plaintiff was arrested for Disorderly Conduct (P.L. § 240.20[5]), Obstructing Governmental Administration in the Second Degree (P.L. § 195.05), and Resisting Arrest (P.L. § 205.30). The N.Y. District Attorney's Office charged Plaintiff with two counts of Disorderly Conduct (P.L. § 240.20[5], [6]) and Resisting Arrest (P.L. § 205.30).

On or about March 17, 2021, all three charges were dismissed pursuant to N.Y.S. Criminal Procedure Law (hereinafter "C.P.L.") § 170.30(1)(e). *See* Certificate of Disposition, dated December 2, 2021, annexed to the Decl. of Felix De Jesus as Exhibit "G."[6]

Regarding the July 28, 2020 incident, Plaintiff brings the following claims against D.I. Nikas: (1) excessive force under 42 U.S.C. § 1983; (2) false arrest under 42 U.S.C. § 1983 and false imprisonment under N.Y.S. law; (3) failure to intervene under 42 U.S.C. § 1983; (4) malicious prosecution under both 42 U.S.C. § 1983 and N.Y.S. law; (5) violations of free speech and freedom of assembly under the U.S. Constitution and N.Y.S. Constitution, and retaliation for Plaintiff exercising those rights; (6) assault under N.Y.S. law; (7) battery under N.Y.S. law; and (8) IIED under N.Y.S. law.

### July 30, 2020

Plaintiff claims that, on July 30, 2020, while "walking through" Foley Square, N.Y., D.I. Nikas asked Plaintiff, in sum and substance, "how was the beach," allegedly in reference to a

---

[6] On a motion to dismiss, a court should consider "the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice may be taken." *Samuels v. Air Transp. Local 504*, 992 F.2d 12, 15 (2d Cir. 1993); *see also Monroe v. Myskowsky*, No. 12-CV-5513 (KPF), 2014 U.S. Dist. LEXIS 14933, 2014 WL 496872, at *2 n.3 (S.D.N.Y. Feb. 6, 2014) (The Court may consider matters of which judicial notice may be taken under Fed. R. Evid. 201, including public records such as arrest reports, indictments, and criminal disposition data) (citing *Kramer v. Time Warner Inc.*, 937 F.2d 767, 773-75 (2d Cir. 1991)); *see also Awelewa v. New York City*, No. 11 Civ. 778 (NRB), 2012 U.S. Dist. LEXIS 24244, 2012 WL 601119, at *7-8 (S.D.N.Y. February 22, 2012).

picture Plaintiff posted on her personal Instagram account. *See* Ex. A, ¶ 30. Regarding this incident, Plaintiff brings the following claims against D.I. Nikas: (1) violations of free speech and freedom of assembly under the U.S. Constitution and N.Y.S. Constitution, and retaliation for Plaintiff exercising those rights; and (2) IIED under N.Y.S. law.

### **August 11, 2020**

On August 11, 2020, Plaintiff was "hanging out" at Washington Square Park, New York, N.Y. *See* Ex. A, ¶ 32. Plaintiff's encounter with police at Washington Square Park was also captured on the BWC of Defendant Cpt. Robert O'Hare.

According to the BWC, at approximately 12:13 a.m., Cpt. O'Hare tells officers, in sum and substance, that they are going to go in and clear the park. *See* BWC of Cpt. Robert O'Hare, annexed to the Decl. of Felix De Jesus as Exhibit "V," 1:30. Cpt. O'Hare enters Washington Square Park and tells officers, in sum and substance, to let people know it is after midnight and the park is closed. *See* Ex. V, 1:39. At approximately 12:14 a.m., Cpt. O'Hare tells people inside Washington Square Park, in sum and substance, it is after midnight and the park is closed. *See* Ex. V, 2:14. At approximately 12:15 a.m., Cpt. O'Hare states, in sum and substance, "Let's go Nicky. The park's closed." *See* Ex. V, 3:33. Cpt. O'Hare continues to tell other people inside Washington Square Park, in sum and substance, it is after midnight and the park is closed. *See* Ex. V, 3:49. At approximately 12:16 a.m., Cpt. O'Hare continues to tell other people inside Washington Square Park, in sum and substance, it is after midnight and the park is closed. *See* Ex. V, 4:02.

At approximately 12: 19 a.m., Plaintiff can be seen on Cpt. O'Hare's BWC video as Cpt. O'Hare continues telling people inside Washington Square Park, in sum and substance, yet again, that the park is closed. *See* Ex. V, 6:58. Cpt. O'Hare says, in sum and substance, "Let's go Nicky. You've been told to leave more than once." *See* Ex. V, 7:25. Plaintiff states, in sum and substance,

oh my god. You know my name. How sophisticated. oh my god. I'm so scared. Eat a dick O'Hare. *See* Ex. V, 7:28.

Regarding this incident, Plaintiff brings the following claims against Cpt. O'Hare: (1) violations of free speech and freedom of assembly under the U.S. Constitution and N.Y.S. Constitution, and retaliation for Plaintiff exercising those rights; and (2) IIED under N.Y.S. law.

## September 29, 2020

On September 29, 2020, Plaintiff was protesting in front of the Office of the Governor of the State of New York in Manhattan, N.Y. *See* Ex. A, ¶ 34. Plaintiff's encounter with police officers on Third Avenue between East 40th Street and East 41st Street, Manhattan, N.Y. was also captured on the BWC of several members of the NYPD.

According to the BWC, at approximately 9:59 p.m., Plaintiff appears to be recording using a cellphone under a "structure." *See* BWC of non-party P.O. Muneeb Shahbaz, annexed to the Decl. of Felix De Jesus as Exhibit "H," 2:25; BWC of non-party P.O. Anthony Lewis, annexed to the Decl. of Felix De Jesus as Exhibit "I," 2:31. In the background, NYPD is playing a recording that says that it is "unlawful to build or maintain structures or shelters under New York City Local Law. You are ordered to remove them immediately. If you refuse, you are subject to arrest." See Ex. H, 2:44. Plaintiff appears to pick something up from under the "structure." See Ex. H, 2:55.

At approximately 10:00 p.m., Plaintiff appears to pick something else up from under the "structure" and appears to continue recording using a cellphone. *See* Ex. H, 3:08. Plaintiff walks off the sidewalk and onto the street while recording NYPD officers. *See* BWC of non-party P.O. Ileana Feliz, annexed to the Decl. of Felix De Jesus as Exhibit "J," 1:36; BWC of non-party Lt. Christopher Schmidt, annexed to the Decl. of Felix De Jesus as Exhibit "K," 4:08-4:20; BWC of non-party P.O. Reginal Jeanraymond, annexed to the Decl. of Felix De Jesus as Exhibit "L," 1:04.

At approximately 10:01 p.m., P.O. Jeanraymond is heard telling Plaintiff, in sum and substance, "ma'am, ma'am get on the sidewalk please get on the sidewalk please." *See* Ex. L, 1:23. Plaintiff does not get on the sidewalk, at first, and says "Where is the riot? Where is the riot?" *See* Ex. L, 1:23-1:37. An individual ("Civilian Jane Doe 1") begins to tell an officer that she knows how to fight and starts swinging in the officer's direction. *See* Ex. K, 4:40; BWC of non-party P.O. Edward Weisenburger, annexed to the Decl. of Felix De Jesus as Exhibit "T," 2:40. A male with the words "NYPD Legal" across his back points in Civilian Jane Doe 1's direction and the officers move forward. *See* Ex. K, 4:46. Although Plaintiff claims that she "prepared herself to leave," this is contrary to what is depicted on BWC. *See* Ex. A, ¶ 35. As people are running, Plaintiff runs onto the sidewalk and does not leave. *See* BWC of non-party P.O. Alfredo Jeff, annexed to the Decl. of Felix De Jesus as Exhibit "M," 2:48; BWC of non-party Sgt. Theresa Wilson, annexed to the Decl. of Felix De Jesus Decl. as Exhibit "N," 3:08; Ex. L, 1:38; See BWC of non-party P.O. Mohamed Yafai, annexed to the Decl. of Felix De Jesus Decl. as Exhibit "O," 02:46.

At approximately 10:02 p.m., Plaintiff is seen on the sidewalk. *See* BWC of non-party Lt. Equashia Allen ("Allen BWC"), annexed to the Decl. of Felix De Jesus as Exhibit "P," 3:43. Civilian John Doe 1 and officers approach Plaintiff. *See* Ex. P, 3:45. A struggle ensues between Plaintiff and the officers who are trying to restrain her as she resists. *See* Ex. P, 3:52. Non-party Officer Gerlando Marchetta runs over to where the officers are struggling with Plaintiff and Civilian John Doe 1, and one of the officers says, in sum and substance, "she's under, she's under, she's under arrest." *See* BWC of non-party P.O. Gerlando Marchetta, annexed to the Decl. of Felix De Jesus as Exhibit "Q," 3:25. Officer Schmidt then runs over to where officers are struggling with Plaintiff and assists in the arrest of Civilian John Doe 1. *See* Ex. K, 5:12.

Plaintiff claims that P.O. John Doe 3 placed Plaintiff in headlock with his baton and dragged Plaintiff to the ground. *See* Ex. A, ¶ 35. This allegation, however, is not depicted on BWC. There is an officer with purple gloves who is holding a baton in his hand, and the officer appears to quickly spin the baton in his hand so that the long side of the baton is facing out when he puts his hand (wearing a purple glove) on what appears to be Plaintiff's shoulder. *See* BWC of non-party P.O. Enmanuel Montesino, annexed to the Decl. of Felix De Jesus as Exhibit "R," 2:09. Another individual, Civilian John Doe 2, is seen on top of Plaintiff, as Plaintiff is on the ground and officers are attempting to restrain her. *See* Ex. P, 4:13.

At approximately 10:03 p.m., P.O. Montesino places a baton between Civilian John Doe 2's head and Plaintiff's head in what appears to be an effort to separate Plaintiff's head from Civilian John Doe 2's head while Civilian John Doe is on top of Plaintiff. *See* Ex. R, 2:17. Plaintiff continues to resist being handcuffed. *See* Ex. P, 5:47. At approximately 10:04 p.m., Plaintiff is finally handcuffed. *See* BWC video of non-party P.O. Steven Holguin, annexed to the Decl. of Felix De Jesus as Exhibit "S," 4:29. At approximately 10:05 p.m., Plaintiff is carried off by police officers to a police van. *See* Ex. M starting at 6:00; Ex. H, 8:33; Ex. I, 8:35.

Plaintiff was arrested for Assault in the Second Degree (P.L. § 120.05[3]), Obstructing Governmental Administration in the Second Degree (P.L. § 195.05), and Resisting Arrest (P.L. § 205.30). The N.Y. District Attorney's Office charged Plaintiff with Assault in the Second Degree (P.L. § 120.05[3]) and Resisting Arrest (P.L. § 205.30). On October 15, 2020, Assault in the Second Degree (P.L. § 120.05[3]) was reduced to Assault in the Third Degree (P.L. § 120.00[2]).

On or about March 17, 2020, both charges were dismissed pursuant to C.P.L. § 170.30(1)(e). *See* Certificate of Disposition, dated December 2, 2021, annexed to the Decl. of Felix De Jesus as Exhibit "U."

Regarding the allegations on September 29, 2020, Plaintiff brings the following claims against John Doe 3, John Doe 4, John Doe 5, John Doe 6, and John Doe 7 (hereinafter "John Does 3-7"): (1) excessive force under 42 U.S.C. § 1983; (2) false arrest under 42 U.S.C. § 1983 and false imprisonment under N.Y.S. law; (3) failure to intervene under 42 U.S.C. § 1983; (4) malicious prosecution under both 42 U.S.C. § 1983 and N.Y.S. law; (5) violations of free speech and freedom of assembly under the U.S. Constitution and N.Y.S. Constitution, and retaliation for Plaintiff exercising those rights; (6) assault under N.Y.S. law; (7) battery under N.Y.S. law; and (8) IIED under N.Y.S. law.

### October 5, 2020

Plaintiff claims that, on October 5, 2020, while protesting in Manhattan, N.Y., Defendant Lt. Michele Irizarry approached Plaintiff and asked, "Hi Nicolle, having a good night?" and later said "[E]veryone knows your fucking name." *See* Ex. A, ¶ 38-39. Plaintiff further alleges that Lt. Irizarry ripped Plaintiff off the sidewalk by her hair, dragged her into the street, and arrested her. *See id.*, ¶ 40. Regarding this incident, Plaintiff brings the following claims against Lt. Irizarry: (1) excessive force under 42 U.S.C. § 1983; (2) false arrest under 42 U.S.C. § 1983 and false imprisonment under N.Y.S. law; (3) failure to intervene under 42 U.S.C. § 1983; (4) malicious prosecution under both 42 U.S.C. § 1983 and N.Y.S. law; (5) violations of free speech and freedom of assembly under the U.S. Constitution and N.Y.S. Constitution, and retaliation for Plaintiff exercising those rights; (6) assault under N.Y.S. law; (7) battery under N.Y.S. law; and (8) IIED under N.Y.S. law.

### October 17, 2020

Plaintiff claims that, on October 17, 2020, while attending a march in Manhattan, N.Y., Defendant Cpt. Julio Delgado was present smoking a cigar and that Plaintiff pointed out that smoking the cigar was not compliant with code. *See id.*, ¶ 41-42. Plaintiff further alleges that Cpt.

Delgado told an officer to arrest Plaintiff in retaliation, and that Cpt. Delgado continued to harass and threaten Plaintiff and directed other officers to do the same, until Plaintiff was forced to leave the protest. *See id.*, ¶ 43. Regarding this incident, Plaintiff brings the following claims against Cpt. Delgado: (1) failure to intervene under 42 U.S.C. § 1983; (2) violations of free speech and freedom of assembly under the U.S. Constitution and N.Y.S. Constitution, and retaliation for Plaintiff exercising those rights; and (3) IIED under N.Y.S. law.

## October 25, 2020

Plaintiff claims that, on October 26, 2020, Plaintiff was protesting in the vicinity of Times Square, N.Y. *See* Ex. A, ¶ 44. Plaintiff's encounter with police officers occurred on October 25, 2020 and was also captured on the BWC of several members of the NYPD.

According to BWC, at approximately 1:41 p.m., there is red paint splattered on the ground and on a black SUV. *See* BWC of non-party P.O. James Arenella, annexed to the Decl. of Felix De Jesus as Exhibit "W," 1:04-1:15. Seconds later, a male civilian, believed to be the victim ("victim"), emerges from the SUV and points out individuals to the officers. *See* Ex. W, 01:15. The victim continues to identify or point out other civilians to officers. *See* Ex. W, 2:04-2:17.

At approximately 1:42 p.m., as Defendant P.O. Jian Yu orders a female to get onto the sidewalk, Plaintiff gets in-between said female and P.O. Yu to yell at P.O. Yu. *See* BWC of P.O. Jian Yu, annexed to the Decl. of Felix De Jesus as Exhibit "X," 00:35-00:48. Seconds later, the victim points out Plaintiff and officers approach Plaintiff. *See* Ex. X, 00:53. Plaintiff appears to try to move through the crowd, but officers surround her. *See* Ex. X, 00:56. Officers then try to handcuff Plaintiff, but she resists by pulling her arms away from officers. *See* Ex. X, 01:01. Eventually, Plaintiff is placed on the ground and arrested. *See* Ex. X, 01:10. Plaintiff is then stood back up to her feet. *See* Ex. X, 01:45. Shortly before or at approximately 1:44 p.m., Plaintiff yells

expletives and insults, including "fascist," repeatedly. *See* Ex. X, 02:39. Plaintiff then adds, "Yeah, still got your precious little flag. . . still got your precious little flag bitch." *See* Ex. X, 02:53.

Plaintiff was arrested and issued a C-Summons for Disorderly Conduct (P.L. § 240.20[1]). On or about May 14, 2021, the charge was dismissed. *See* Certificate of Disposition, dated December 22, 2021, annexed to the Decl. of Felix De Jesus as Exhibit "Y."

Regarding this incident, Plaintiff brings the following claims against P.O. Yu and John Does 8-11: (1) excessive force under 42 U.S.C. § 1983; (2) false arrest under 42 U.S.C. § 1983 and false imprisonment under N.Y.S. law; (3) failure to intervene under 42 U.S.C. § 1983; (4) malicious prosecution under both 42 U.S.C. § 1983 and N.Y.S. law; (5) violations of free speech and freedom of assembly under the U.S. Constitution and N.Y.S. Constitution, and retaliation for Plaintiff exercising those rights; (6) assault under N.Y.S. law; (7) battery under N.Y.S. law; and (8) IIED under N.Y.S. law.

### November 17, 2020

Plaintiff claims that, on November 17, 2020, while protesting in Brooklyn Borough Hall, P.O. Casaceli called Plaintiff by her name and later said "every officer knows your fucking name; your picture is on all of our desks." *See* Ex. A, ¶ 47. Regarding this incident, Plaintiff brings the following claims against P.O. Casaceli: (1) violations of free speech and freedom of assembly under the U.S. Constitution and N.Y.S. Constitution, and retaliation for Plaintiff exercising those rights; and (2) IIED under N.Y.S. law.

### December 11, 2020

Plaintiff further claims that, on December 11, 2020, she was protesting near the United Nations Building in Manhattan. *See* Ex. A, ¶ 48. Plaintiff alleges that P.O. John Does 12 and 13 ran up to her from behind, tackled her to the ground, and arrested her. *Id.*, ¶ 49. Plaintiff further alleges that, the officers then ridiculed, taunted, and mocked her. *Id.* Plaintiff further claims that

the NYPD released her full name and home address, as well as a false narrative for the basis of the arrest, to the media. *Id.*, ¶ 51. Regarding this incident, Plaintiff brings the following claims against P.O. John Does 12 and 13: (1) excessive force under 42 U.S.C. § 1983; (2) false arrest under 42 U.S.C. § 1983 and false imprisonment under N.Y.S. law; (3) failure to intervene under 42 U.S.C. § 1983; (4) malicious prosecution under both 42 U.S.C. § 1983 and N.Y.S. law; (5) violations of free speech and freedom of assembly under the U.S. Constitution and N.Y.S. Constitution, and retaliation for Plaintiff exercising those rights; (6) assault under N.Y.S. law; (7) battery under N.Y.S. law; and (8) IIED under N.Y.S. law.

## STANDARD OF REVIEW

Under FRCP 12(b)(6), a pleading may be dismissed for failure to state a claim upon which relief can be granted. Fed. R. Civ. Pro. 12(b)(6). In considering a motion to dismiss, a court must "accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Phelps v. Kapnolas*, 308 F.3d 180, 184 (2d Cir. 2002) (internal quotes omitted). However, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2008) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint must set forth "enough facts to state a claim to relief that is plausible on its face" in order to survive a motion to dismiss. *Twombly*, 550 U.S. at 570 "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly* at 557).

## ARGUMENT

13

## POINT I
## <u>PLAINTIFF'S FALSE ARREST CLAIM FAILS AS A MATTER OF LAW</u>

"[T]he existence of probable cause for the arrest is a complete defense to an action for false arrest." *Morris v. Silvestre*, No. 14-1188-cv, 2015 U.S. App. LEXIS 3840, at **2 (2d Cir. March 12, 2015) (internal quotations omitted). Probable cause exists "when the arresting officer has knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." *Demosthene v. City of New York*, No. 19-3002, 2020 U.S. App. LEXIS 32139, at **4 (2d Cir. Oct. 9, 2020) (quoting *Singer v. Fulton Cty. Sheriff*, 63 F.3d 110, 119 (2d Cir. 1995) (internal quotation marks omitted), *cert. denied*, 517 U.S. 1189 (1996)). Probable cause requires only a probability, not an actual showing, of criminal activity. *Illinois v. Gates*, 462 U.S. 213, 244 n.13 (1983), *reh'g denied*, 463 U.S. 1237 (1983).

The elements for a false arrest claim under 42 U.S.C. § 1983 "are substantially the same as the elements of a false arrest claim under New York law." *Hygh v. Jacobs*, 961 F.2d 359, 366 (2d Cir. 1992) (internal quotations and citation omitted). An officer is not required to state, "hard certainties," but instead "requires only facts establishing the kind of fair probability on which a reasonable and prudent person, as opposed to a legal technician, would rely." *Demosthene,* 2020 U.S. App. LEXIS 32139, at **4 (quoting *Figueroa v. Mazza*, 825 F.3d 89, 99 (2d Cir. 2016) (internal quotation marks and alteration omitted)). Here, Plaintiff committed disorderly conduct, disorderly behavior, and resisting arrest on July 28, 2020, unlawful assembly on September 29, 2020, and criminal mischief, petit larceny, and harassment on October 25, 2020. All these actions would lead a reasonable officer to have probable cause to arrest Plaintiff.

### A.  There was Probable Cause to Arrest Plaintiff on July 28, 2020

New York State Penal Law (hereinafter "P.L."), in pertinent part, prohibits an individual from obstructing vehicular traffic when said individual has an intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof. *See* P.L. § 240.20(5); s*ee also* New York City Administrative Code ("A.C.") § 10-179(a)(5) (including criminal negligence but otherwise mirroring P.L. § 240.20 (5)). N.Y.'s Penal Law also prohibits, as relevant here, an individual from intentionally preventing or attempting to prevent an officer from effecting an authorized arrest of that individual. *See* P.L. § 205.30. Penal Law § 205.30, resisting arrest, is an A misdemeanor criminal offense punishable by up to 364 days in jail and/or a fine. See P.L. § 205.30; P.L. § 70.15(1); P.L. § 80.05(1).

Under the Rules of the City of New York (hereinafter "R.C.N.Y."), in pertinent part, the use of highways by pedestrians is prohibited, unless signs permit the use, in order to provide for the maximum safe use of the highways. *See* R.C.N.Y. § 4-12(o)(1).

Here, Plaintiff and others were blocking the street and did not allow vehicular traffic to pass, as depicted on BWC. *See* Ex. B*,* 9:54-10:42; Ex. C, 1:29-1:31; Ex. D, 1:27. While blocking traffic, Plaintiff, along with others, was also screaming. *See* Ex. B*,* 9:54-10:54; Ex. C, 1:29-1:40; Ex. D, 1:27. As an officer attempted to handcuff Plaintiff, Plaintiff kicked her legs up in the air, tossed her body side to side, and moved her left arm from her back to underneath her body in what appears to be an attempt to avoid being handcuffed, and eventually Plaintiff said, in sum and substance, get the fuck off me. *See* Ex. F, 00:49-00:54; Ex. E, 00:53-01:07.

As such, officers had probable cause to arrest Plaintiff for disorderly conduct. *See* P.L. § 240.20(5); A.C. § 10-179(a)(5); *People v. Carter*, 162 Misc.2d 643 (N.Y. Crim. Ct. 1994) (finding "that by remaining in the street and yelling while vehicles were attempting to pass, the defendant recklessly created a risk of public inconvenience, annoyance or alarm"); *see also People v.*

*Hickson*, No. 570079/13, 2015 N.Y. Misc. LEXIS 4634, at *1 (N.Y. App. Term, 1st Dep't Dec. 22, 2015) (finding that the trial court "was warranted in concluding that defendant's conduct — standing in front of a police car in the middle of a busy street and refusing to comply with the police order to move — recklessly created a risk of public inconvenience, annoyance, or alarm by obstructing vehicular traffic").

Plaintiff's actions also violated the use of the roadways. *See* R.C.N.Y. § 4-12(o)(1); *see also, e.g., Smart v. City of N.Y.*, No. 08 Civ. 2203 (HB), 2009 U.S. Dist. LEXIS 30241, at *13-*15 (S.D.N.Y. Apr. 1, 2009) (holding an arrest lawful because officer observed plaintiff sitting in double-parked car and "it is well-established that an officer's direct observation of even a minor traffic violation is sufficient probable cause to arrest the violator.") (citing *U.S. v. Scopo*, 19 F.3d 777, 781-782 (2d Cir. 1994)) (other citations omitted). "A traffic infraction, however minor, can establish probable cause for a custodial arrest." *Holmes v. City of N.Y.*, 2018 U.S. Dist. LEXIS 53419, at *10 (S.D.N.Y. 2018) (quoting *U.S. v. Scopo*, 19 F. 3d 777, 782 (2d Cir. 1994)). Moreover, Plaintiff's actions of kicking her legs up in the air, tossing her body side to side, and moving her left arm from her back to underneath her body in what appeared to be an attempt to avoid being handcuffed while an officer attempted to arrest Plaintiff constituted resisting arrest. *See* P.L. § 205.30; Ex. F, 00:49-00:54; Ex. E, 00:53-01:07.

Therefore, Plaintiff's false arrest claim under 42 U.S.C. § 1983 and false imprisonment claim under N.Y.S. law against D.I. Nikas should be dismissed as BWC confirms that there was probable cause to arrest Plaintiff for disorderly conduct, disorderly behavior, and resisting arrest.

### B.  There was Probable Cause to Arrest Plaintiff on September 29, 2020

New York's Penal Law, as relevant here, prohibits an individual from being present at an assembly with four or more other persons where said assembly either has or develops for the purpose of engaging or preparing to engage in tumultuous and violent conduct likely to cause

public alarm and said individual remains at said assembly with the intent of advancing that purpose. *See* P.L. § 240.10. Penal Law § 240.10 is a B misdemeanor, punishable by up to three months in jail and/or a fine not to exceed $500. *See* P.L. § 70.15(2); P.L. § 80.05(2).

Here, as depicted on BWC, there are over four persons at this protest and Plaintiff is clearly present at this location. *See* Ex. Q, 02:10-02:25. Also, based on the police recording playing in the background, the police appear to be present at the location to have the civilians vacate this structure on the sidewalk. *See* Ex. H, 2:44. When Civilian Jane Doe 1 started swinging in the officer's direction and told the officer that she knew how to fight, the assembly developed for the purpose of engaging in tumultuous and violent conduct toward police officers in order to cause public alarm. In fact, around the same time, Plaintiff asked out loud, in sum and substance, where was the riot. *See* Ex. L, 1:23-1:37. As the police attempted to apprehend Civilian Jane Doe 1, Plaintiff ran onto the sidewalk instead of leaving the location. *See* Ex. M, 2:48; Ex. N, 3:08; Ex. L, 1:38, Ex. O, 2:46. At this point, officers had probable cause to arrest Plaintiff for unlawful assembly. *See* P.L. § 240.10. Shortly after, police attempted to arrest Plaintiff, but Plaintiff resisted. *See supra,* at 16-17; P.L. § 205.30.

Therefore, Plaintiff's false arrest claim under 42 U.S.C. § 1983 and false imprisonment claim under N.Y.S. law against John Does 3-7 should be dismissed as the police had probable cause to arrest Plaintiff for unlawful assembly. Furthermore, any amendments to the complaint by Plaintiff in order to name any police officers would be futile as there was, without question, probable cause to arrest plaintiff.

### C.  There was Probable Cause to Arrest Plaintiff on October 25, 2020

A person commits criminal mischief in the fourth degree "when, having no right to do so nor any reasonable ground to believe that he or she has such right, he or she: (1) Intentionally damages property of another person." *See* P.L. § 145.00(1). Criminal mischief is an A

misdemeanor criminal offense punishable by up to 364 days in jail and/or a fine. *See* P.L. § 145.00(1); P.L. § 70.15(1); P.L. § 80.05(1). An individual is guilty of petit larceny "when he steals property." *See* P.L. § 155.25. Under the Penal Law, larceny is defined as "with intent to deprive another of property or to appropriate the same to himself or to a third person, [an individual] wrongfully takes, obtains or withholds such property from an owner thereof." *See* P.L. § 155.05. Petit larceny is also an A misdemeanor criminal offense punishable by up to 364 days in jail and/or a fine. *See* P.L. § 145.00(1); P.L. § 70.15(1); P.L. § 80.05(1).

A person is guilty of harassment in the second degree "when, with intent to harass, annoy or alarm another person (1) he or she strikes, shoves, kicks or otherwise subjects such other person to physical contact, or attempts or threatens to do the same." *See* P.L. § 240.26. Harassment in the second degree is a violation punishable by up to 15 days in jail and/or a fine. See P.L. § 240.20; P.L. § 70.15(4); P.L. § 80.05(4).

"It is well-established that a law enforcement official has probable cause to arrest if he received his information from some person, normally the putative victim or eyewitness.'" *Wieder v. City of N.Y.*, 569 F. App'x 28, 29 (2d Cir. 2014) (quoting *Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006)). Probable cause does not require an arresting officer to "prove plaintiff's version wrong before arresting him nor explore and eliminate every theoretically plausible claim of innocence before making an arrest." *Berg v. 505-23 Bar Inc.*, 2012 U.S. Dist. LEXIS 86622, at *24 (S.D.N.Y. 2012). Therefore, Plaintiff is guilty of criminal mischief, petit larceny, and harassment. *See* P.L. § 145.00(1); P.L. § 155.25; P.L. § 240.20.

Here, Plaintiff was identified by a civilian victim as the assailant who threw paint at the victim's car, grabbed his daughter in Times Square, and stole his flag. As a result of the victim's identification, Plaintiff was arrested. *See* Ex. X., 00:53-01:10. At the time of her arrest, Plaintiff

can be heard yelling, in sum and substance, I still have your flag, bro. *See* Ex. 02:39-03:00. Further, Plaintiff's own Social Media post states that "the man. . . pointed me out [and] said I assaulted him." *See* Exhibit Z. As such, there was probable cause to arrest plaintiff for criminal mischief, petit larceny, and harassment. *See* P.L. § 145.00(1); P.L. § 155.25; P.L. § 240.20. Therefore, Plaintiff's false arrest claim under 42 U.S.C. § 1983 and false imprisonment claim under N.Y.S. law against Officer Yu Jian, and any potential John Doe defendants should be dismissed as there was probable cause to arrest Plaintiff for criminal mischief, petit larceny, and harassment.

## POINT II
### PLAINTIFF FAILS TO MEET THE REQUIRED ELEMENTS FOR MALICIOUS PROSECUTION UNDER STATE AND FEDERAL LAW

In the context of a malicious prosecution claim, probable cause to prosecute is a complete defense to a claim of malicious prosecution. *Murphy v. Lynn*, 118 F.3d 938, 947 (2d Cir. 1997). "To prevail on a malicious prosecution claim under New York State law, a plaintiff must show: '(1) the commencement or continuation of a criminal proceeding by the defendant against the plaintiff, (2) the termination of the proceeding in favor of the accused, (3) the absence of probable cause for the criminal proceeding and (4) actual malice.'" *Kee v. City of N.Y.*, 12 F.4th 150, 162 (2d Cir. 2021) (quoting *Smith-Hunter v. Harvey,* 95 N.Y.2d 191, 195 (N.Y. 2000)). In addition to these state law elements, a malicious prosecution claim brought under 42 U.S.C. § 1983 requires showing "a sufficient post-arraignment liberty restrain to implicate the plaintiff's Fourth Amendment rights." *Rohman v. N.Y. City Transit Authority*, 215 F.3d 208, 215-216 (2d Cir. 2000). The failure to establish any one of these elements results in a void malicious prosecution claim. *Angevin v. City of N.Y.*, 204 F. Supp. 3d 469, 480 (E.D.N.Y. 2016); *Smith-Hunter v. Harvey*, 95 N.Y.2d 191, 195 (N.Y. 2000).

Here, as shown above, there was probable cause to arrest and prosecute Plaintiff on July 28, 2020, September 29, 2020, and October 25, 2020. As such, Plaintiff's malicious prosecution claims for July 28, 2020, September 29, 2020, and October 25, 2020 should likewise be dismissed.

In addition, plaintiff does not adequately plead that any of the named officers acted with "actual malice" against plaintiff as she must in order to maintain a claim for malicious prosecution. *See generally* Ex. A. Therefore, Plaintiff's malicious prosecution claim under both 42 U.S.C. § 1983 and N.Y.S. law for July 28, 2020, September 29, 2020, and October 25, 2020 should be dismissed as probable cause existed to arrest and prosecute Plaintiff on those dates.

**POINT III**
**<u>PLAINTIFF WAS NOT SUBJECTED TO EXCESSIVE FORCE</u>**

Plaintiff alleges "each Defendant, intentionally and/or recklessly used and attempted to use unreasonable, unlawful and/or excessive force on Plaintiff" in violation of the Fourth and Fourteenth Amendments, 42 U.S.C. § 1983, the N.Y.S. Constitution, N.Y.S. laws, and the common laws of N.Y. *See* Ex. A ¶¶ 140. An excessive force claim is "analyzed under the standard of reasonableness, balancing the 'nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake.'" *Fink v. Inc. Vill. Of E. Hampton,* 2021 U.S. Dist. LEXIS 233372, at *31 (E.D.N.Y. 2021) (quoting *Graham v. Connor*, 490 U.S. 386, 394-95 (1989)). The claim must "allege conduct that was 'objectively unreasonable' in light of the circumstances." *Bender v. City of N.Y.*, 2011 U.S. Dist. LEXIS 103947, at *18 (S.D.N.Y. 2011) (quoting *Lynch v. City of Mount Vernon*, 567 F. Supp. 2d 459, 467 (S.D.N.Y. 2008)). The government action of arresting those who engage in disorderly conduct, disorderly behavior, unlawful assembly, criminal mischief, petit larceny, and harassment is a rational, legitimate government objective. *See County of Sacramento v. Lewis,* 523 U.S. 833, 846 (1998).

As to the incidents that are alleged to have occurred on July 28, 2020, September 29, 2020, and October 25, 2020, as depicted by the body-worn camera videos, there is no evidence that the City Defendants who arrested Plaintiff were the cause of her alleged injuries or that they used excessive force or an unlawful use of force during the interaction. Specifically, BWC from July 28, 2020 depicts Plaintiff resisting being handcuffed and being placed on the ground by the police in order to handcuff Plaintiff. *See* Ex. F, 00:49-00:54; Ex. E, 00:53-01:07. The July 28, 2020 BWC further show that Plaintiff continued to resist being handcuffed even while on the ground. *Id.* Similarly, BWC from September 29, 2020 depicts Plaintiff resisting being placed in handcuffs by the police as the officers are attempting to arrest Plaintiff. *See supra,* at 16-17. In fact, on September 29, 2020 there were two civilians who got involved in Plaintiff's arrest. *Id.* Lastly, on October 25, 2020, Plaintiff, in similar fashion, attempts to run away from police and resists being arrested until placed on the ground by officers. *See* Ex. X., 00:53-01:10.

Therefore, Plaintiff's excessive force claim under 42 U.S.C. § 1983, assault claim under N.Y.S. law, and battery claim under N.Y.S. law regarding July 28, 2020, September 29, 2020, and October 25, 2020 should be dismissed as there is no evidence that City Defendants used excessive force or an unlawful use of force against plaintiff. Furthermore, any amendments made to the complaint by Plaintiff in order to name any police officers would be futile as the excessive force, assault, and battery claims under N.Y.S. law fail.

## POINT IV
## <u>CITY DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY</u>

In the context of a false arrest claim, an officer making an arrest without probable cause is nonetheless entitled to qualified immunity if he can establish that there was "arguable probable cause" for the arrest, defined by the Second Circuit as "[existing] 'if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable

competence could disagree on whether the probable cause test was met.'" *Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004); *Parisi v. Suffolk County*, No. 04 Civ. 2187 (ENV) (ETB), 2009 U.S. Dist. LEXIS 112388, *29-30 (E.D.N.Y. Nov. 20, 2009). "An officer's actions are objectively unreasonable when no officer of reasonable competence could have made the same choice in similar circumstances." *Lennon v. Miller*, 66 F.3d 416, 420-21 (2d Cir. 1995). The Supreme Court has "repeatedly . . . stressed the importance of resolving immunity questions at the earliest possible stage in the litigation." *Pearson v. Callahan*, 555 7.S. 223, 231 (2009) (quoting *Hunter v. Bryant* 502 U.S. 224).

Here, there was probable cause for Plaintiff's arrests, as discussed *supra*. However, even assuming *arguendo* that probable cause is somehow lacking, the officers are entitled to qualified immunity because they, at the very least, had *arguable* probable cause for Plaintiff's arrests. It was objectively reasonable for the officers to believe probable cause existed to arrest Plaintiff on July 28, 2020 when she was standing in an active roadway after being informed by the police to get on the sidewalk, when the traffic light was green in favor of vehicles, and when Plaintiff was yelling in the street. *See supra*, at 10-11. It was also objectively reasonable for officers to believe probable cause existed to arrest Plaintiff on September 29, 2020 when Plaintiff was in an assembly of more than four individuals and remained at the location after the assembly developed for the purpose of engaging in tumultuous and violent conduct toward the police officers after Civilian Jane Doe 1 was swinging in an officer's direction in order to cause public alarm. *See supra*, at 14-16. It was also objectively reasonable for the officers to believe probable cause existed to arrest Plaintiff on October 25, 2020 when Plaintiff was identified by a civilian victim as the person who grabbed the victim's daughter and threw paint at her car. *See supra*, at 19-20.

22

Therefore, Plaintiff's false arrest claim under 42 U.S.C. § 1983 and false imprisonment claim under N.Y.S. law regarding July 28, 2020, September 29, 2020, and October 25, 2020 should be dismissed as those defendant police officers are entitled to qualified immunity.

## POINT V

### PLAINTIFF'S IIED CLAIM FAILS AS A MATTER OF LAW

Claims for IIED are meant to address claims not specifically addressed by other available causes of action and are generally not allowed where a claim falls under more traditional tort liability. *Moore v. City of N.Y.*, 219 F. Supp. 2d 335, 339 (E.D.N.Y. 2002) (granting defendants summary judgment and dismissing plaintiff's claim of IIED as being encompassed by plaintiff's claims for assault, battery, and malicious prosecution) (quoting *Hansel v. Sheridan*, 991 F. Supp. 69, 75 (N.D.N.Y. 1998) (McAvoy, Chief Judge)); *Devito v. Barrant*, No. 03-CV-1927 (DLI) (RLM), 2005 U.S. Dist. LEXIS 22444, at *30 (E.D.N.Y. Aug. 23, 2005) (dismissing claims of negligent and IIED because "'the conduct underlying the claim[s] falls within the ambit of traditional tort liability' and is included in plaintiff's claims for assault and battery") (quoting *Moore v. City of New York*, 219 F. Supp. 2d 335, 339 (E.D.N.Y. 2002)). Furthermore, "public policy bars claims sounding in intentional infliction of emotional distress against a government entity." *Rivera v. City of N.Y.*, 392 F.Supp.2d 644, 657 (S.D.N.Y. 2005) (quoting *Lauer v. City of N.Y.*, 240 A.D.2d 543, 659 N.Y.S.2d 57, 58 (2nd Dep't 1997)). Here, Plaintiff's IIED claims fail because the conduct claimed is encompassed by Plaintiff's claims for assault and battery as well as Plaintiff's claims of First Amendment violations of free speech.

An IIED claim has four elements: (i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (iii) a causal connection between the conduct and inquiry; and (iv) severe emotional distress. *Chanko v. Am. Broad. Cos.*, 27 N.Y.3d 46, 56 (N.Y. 2016). When analyzing a claim of IIED, courts have tended

to focus on the outrageousness element and have repeatedly held that, in order to state a valid claim, conduct must be alleged that is intentional or reckless and "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in civilized community." *Murphy v. American Home Prods. Corp.*, 58 N.Y.2d 293, 303 (1983) (quoting Restatement [Second] of Torts § 46, Comment d); *Romero v. City of N.Y.*, 839 F. Supp. 2d 588, 629 (E.D.N.Y. 2012). These requirements are difficult to satisfy, and the law does not compensate for "threats, annoyances or petty oppressions or other trivial incidents which must necessarily be expected and are incidental to modern life no matter how upsetting." *McNamee v. Clemens*, 762 F. Supp. 2d 584, 609 (E.D.N.Y. 2011) (citing *Fusco v. Fusco*, 859 N.Y.S.2d 894 (N.Y. Sup. Ct. 2008)).

As discussed *supra*, Plaintiff's allegations of extreme and outrageous conduct, are merely that police "intentionally targeted [her] by approaching her in public. . . making their presence and knowledge of her known. . . and singling (*sic*) her out at protests and harassing, intimidating, and unlawfully arresting her." *See* Ex. A ¶¶ 57-58. Thus, Plaintiff fails to allege sufficient facts to rise to the level of "extreme and outrageous" conduct. Therefore, Plaintiff's IIED claims should be dismissed as Plaintiff's iteration of the facts fails to state a claim for IIED.

### POINT VI
### PLAINTIFF'S FIRST AMENDMENT CLAIMS FAIL
### AS PLAINTIFF'S SPEECH WAS NOT "CHILLED"

Plaintiff's eighth cause of action alleges a claim of violating Plaintiff's First Amendment rights under the U.S. Constitution and violating Plaintiff's Freedom of Speech and Freedom of Assembly rights under the N.Y.S. Constitution. Specifically, according to the complaint, Plaintiff alleges that Defendant NYPD Officer violated Plaintiff's "constitutionally-protected activities of speech, assembly and expressive conduct and retaliated against Plaintiff [for] having engaged in

said activities by assaulting, battering, detaining and falsely charging" Plaintiff. *See* Ex. A, ¶ 198.

Furthermore, according to the complaint, Plaintiff alleges that City Defendants' activities "prevent

Plaintiff[] from continuing to engage in such protected speech and/or conduct." *Id.* at ¶ 200.

Finally, according to the complaint, Plaintiff alleges that City Defendants "targeted, surveilled and

intimidated Plaintiff when she was not participating in protests and Plaintiff suffered adverse

effects on her protected speech." *Id.*, ¶ 207.

"In order to state a retaliation claim, [the Second Circuit] require[s] a private citizen to

show: "(1) he has an interest protected by the First Amendment; (2) defendants' actions were

motivated or substantially caused by his exercise of that right; and (3) defendants' actions

effectively chilled the exercise of his First Amendment right." *Kuck v. Danaher*, 600 F.3d 159,

168 (2d Cir. 2010) (citing *Curley v. Village of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001)) (affirming

the dismissal of a First Amendment retaliation claim where the plaintiff failed to allege that he was

threatened by the defendants or that his speech was chilled).

City Defendants' actions have not chilled the exercise of Plaintiff's First Amendment

rights. Plaintiff protested on at least nine (9) other occasions following her first encounter with the

police on July 24, 2022. Indeed, following her alleged interaction with police on July 24, 2020,

Plaintiff went to another protest only four days later, on July 28, 2020. She continued to protest,

clearly undeterred, an additional nine (9) times until December 11, 2020. *See generally* Ex. A.

Even if this Court were to find that Plaintiff has properly alleged First Amendment claims

even though she has not been "chilled" by any conduct of the City Defendants, Plaintiff's First

Amendment claim regarding August 11, 2020 also fails because Plaintiff cannot demonstrate an

interest protected by the First Amendment. Specifically, Plaintiff claims that Cpt. O'Hare, *inter*

*alia*, wanted Plaintiff to know that the NYPD was surveilling Plaintiff, so Cpt. O'Hare approached

Plaintiff and said "time to go Nicky" and then walked away. *See* Ex. A, ¶ 32-33. However, Plaintiff conveniently omitted that she was at Washington Square Park after midnight, the park's closing hours, and that Cpt. O'Hare entered Washington Square Park to instruct that everyone, including Plaintiff, exit the park because the park was closed. *See supra*; *see also* 56 RCNY §§ 1-03(a)(1), 1-03(a)(3), and 1-03(c)(3).

Because Plaintiff continued to attend protests after her first police encounter as alleged in the Complaint, her First Amendment rights were not "chilled." For these reasons, Plaintiff's First Amendment retaliation claim against City Defendants must be dismissed.

## POINT VII
## PLAINTIFF'S *MONELL* CLAIM FAILS AS A MATTER OF LAW

In order to hold the City of New York liable under 42 U.S.C. § 1983 for an alleged constitutional violation, Plaintiff must plead: "(1) an official policy or custom that (2) cause[d] [plaintiff] to be subjected to (3) a denial of a constitutional right." *See Aquino v. City of New York*, 16 Civ. 1577 (GHW), 2017 U.S. Dist. LEXIS 10436, at *7-8 (S.D.N.Y. Jan. 25, 2017) (citing *Rodriguez v. Winski*, 973 F. Supp. 2d 411, 425 (S.D.N.Y. 2013)). A municipality may not be held liable under 42 U.S.C. § 1983 solely based on *respondeat superior*. *See Monell v. Dep't of Social Services*, 436 U.S. 658, 663 n.7, 694-95 (1978). Thus, a "municipality is not vicariously liable for its employees' actions under 42 U.S.C. § 1983." *See Aquino*, 16 Civ. at *7 (citing *Connick v. Thompson*, 563 U.S. 51, 60 (2011)). However, municipalities are "liable for 'their own illegal acts.'" *Id*. (citations omitted).

Plaintiff can satisfy the "policy or custom" prong required for municipal liability by alleging "the existence of (1) a formal policy, see *Monell*, 436 U.S. at 690; (2) actions taken or decisions made by final municipal policymakers that caused the violation of [plaintiff's] rights, *see Pembaur v. City of Cincinnati*, 475 U.S. 469, 483-84 (1986) (plurality opinion); (3) a practice

so persistent and widespread that it constitutes a 'custom or usage' and implies the constructive knowledge of policymakers, *see Monell*, 436 U.S. at 690-91; or (4) a failure to properly train or supervise municipal employees that amounts to 'deliberate indifference to the rights of those with whom municipal employees will come into contact.'" *Aquino*, 16 Civ. at *8 (citing *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)).

"The plaintiff must first prove the existence of a municipal policy or custom in order to show that the municipality took some action that caused him injuries . . . . Second, the plaintiff must establish a causal connection – an affirmative link – between the policy and the deprivation of his constitutional rights." *Vippolis v. Vill. of Haverstraw*, 768 F.2d 40, 44 (2d Cir. 1985) (internal quotation marks and citation omitted). "To establish Monell liability, the causal link must be strong; that is, the policy must be the 'moving force' behind a constitutional violation." *Mercado v. City of New York*, 08 CV 2855 (BSJ)(HP), 2011 U.S. Dist. LEXIS 140430, at *23 (S.D.N.Y. Dec. 5, 2011) (citing *Monell*, 436 U.S. at 691, 694).

A claim for municipal liability cannot stand where there is no causal connection between the plaintiff's alleged constitutional violation and the alleged unlawful custom. *See, e.g., Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006) ("Monell does not provide a separate cause of action . . .; it extends liability to a municipal organization where that organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation."); *Galgano v. Cty. of Putnam*, No. 16-CV-3572 (KMK), 2020 U.S. Dist. LEXIS 116682, at *30-31 (S.D.N.Y. July 2, 2020) (same). Stated differently, even where a plaintiff identifies an unconstitutional custom or practice, if that plaintiff's rights were not violated as a result of the application of that custom or practice the claim fails. *See* U.S. Const. Art. III, Section 2; *An v. City*

*of New York*, 2017 U.S. Dist. LEXIS 84364, at *8 (S.D.N.Y. June 1, 2017) (standing, including injury in fact, required to bring *Monell* claim).

### A. Plaintiff Cannot Proceed on a *Monell* Claim as to Three Incidents as There is No Constitutional Violation

One of the requirements to hold a municipality liable under a *Monell* claim is "an underlying constitutional violation by a state actor." *Lewis v. City of Newburgh*, No. 20-CV-7973 (CS), 2021 U.S. Dist. LEXIS 242494, at *20 (S.D.N.Y. December 20, 2021) (quoting *Claudio v. Sawyer*, 675 F. Supp. 2d 403, 408 (S.D.N.Y 2009)). If a plaintiff "lacks any underlying claim of a deprivation of a constitutional right, the claim of municipal liability on the part of the municipal defendant must be dismissed as well." *Id.*, at *21 (quoting *Lener v. Hempstead Pub. Sch.*, 55 F. Supp. 3d 267, 283 n. 14 (E.D.N.Y. 2014)); *see also Segal v. City of New York*, 459 F.3D 207, 219 (2d Cir. 2006)("Because the district court properly found no underlying constitutional violation, its decision not to address the municipal defendants' liability under Monell was entirely correct.").

As discussed *supra*, there was probable cause to arrest Plaintiff on July 28, 2020, September 29, 2020, and October 25, 2020, and probable cause is a complete defense to claims of false arrest and malicious prosecution. Furthermore, with respect to the July 28, 2020, September 29, 2020, and October 25, 2020 incidents, as discussed *supra* and as depicted on BWC, there is no evidence that any of the City Defendants who arrested Plaintiff were the cause of her alleged injuries or that they used excessive force or an unlawful use of force during the interaction. In all three of these incidents, false arrest, malicious prosecution, and excessive force are the main claims and, without these claims, the other claims as to July 28, 2020, September 29, 2020, and October 25, 2020 also fail. Therefore, because there is no underlying constitutional violation as to these three dates of incidents, the municipal liability claim against the City of New York should be dismissed. *See, e.g., Lewis*, 2021 U.S. Dist. LEXIS 242494, at *21.

28

Therefore, since there was no underlying constitutional violation as to the July 28, 2020, September 29, 2020, and October 25, 2020 incidents, Plaintiff cannot maintain a *Monell* claim premised on those dates of incidences.

### B.  Plaintiff's Complaint Fails to Adequately Allege A Municipal Policy or Practice

In order to plead a plausible claim for municipal liability for use of a form of excessive force, Plaintiff must "allege that the practice, custom, or usage was so widespread and so persistent that it has the force of law." *Farmer v. Cty. of Westchester*, 18 Civ. 2691 (NSR), 2021 U.S. Dist. LEXIS 175597, at \*31 (S.D.N.Y. Sep. 15, 2021); *see also*, *Brodeur v. City of New York*, No. 99 Civ. 661 (WP), 2002 U.S. Dist. LEXIS 4500, at \*7 (S.D.N.Y. Mar. 18, 2002) (dismissing claim when complaint "flatly assert[ed] a policy but contain[ed] no factual allegations sufficient to establish a municipal policy or custom").

"The mere assertion . . . that a municipality has such a custom or policy is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference." *Bradley v. City of New York*, 08 Civ. 1106 (NGG), 2009 U.S. Dist. LEXIS 51532, at \*8-\*9 (E.D.N.Y. June 18, 2009) (citing *Dwares v. City of New York*, 985 F.2d 94, 100 (2d Cir. 1993)). Courts routinely dismiss boilerplate assertions of municipal liability. *Plair v. City of New York*, 789 F. Supp. 2d 459, 469 (S.D.N.Y. 2011) (collecting cases). Moreover, wholly conclusory allegations of municipal liability are routinely dismissed by district courts in this Circuit. *Franks v. City of New York*, 13 Civ. 5264 (KAM), 2017 U.S. Dist. LEXIS 49532, at \*14 (E.D.N.Y. Mar. 31, 2017); *Leibovitz v. City of New York*, 15 Civ. 1722 (KAM), 2015 U.S. Dist. LEXIS 84995, at \*12-14 (E.D.N.Y. June 30, 2015); *Banushi v. City of New York*, 09 Civ. 2937 (KAM), 2010 U.S. Dist. LEXIS 109903, at \*35-37 (E.D.N.Y. Oct. 15, 2010) (KAM); *Swinton v. City of New York*, 08 Civ. 3278 (RJD)(RML), 2011 U.S. Dist. LEXIS 32384, at \*15-17 (E.D.N.Y. Mar. 28, 2011) (dismissing as conclusory plaintiff's claim that [ADA's] inflate charges); *Cuevas v. City of New*

*York*, 07 Civ. 4169 (LAP), 2009 U.S. Dist. LEXIS 114984, at *10 (S.D.N.Y. Dec. 7, 2009) ("Plaintiff's boilerplate allegations against the City … satisfy neither the elements [for municipal liability], nor the pleading requirements set forth in *Iqbal*").

Plaintiff fails to identify any unconstitutional policy or practice of the NYPD. First, Plaintiff makes wholly conclusory allegations of a municipal policy or practice. For example, Plaintiff alleges, generally, that "the NYPD was permitted, encouraged and authorized to use violent, unconstitutional and unlawful measures to interfere, stop and prevent protest regarding police accountability" and that "Defendants knowingly and purposefully used types and levels of force that were excessive and unnecessary against Plaintiff and other peaceful protestors, despite such levels of force being in contravention of, or inconsistent with, NYPD policies and/or training." *See* Ex. A, ¶ 73-74; s*ee also* Ex. A, ¶¶ 76, 77, 82, 86. These conclusory allegations are inadequate.

Second, Plaintiff's reliance on the Department of Investigation's ("DOI") report is misplaced. "Research reports may be used to bolster *Monell* claims, but only if those reports are sufficiently connected to the specific facts of the case and are of recently recent vintage." *McLeod v. Llano*, 17 Civ. 6062 (ARR), 2019 U.S. Dist. LEXIS 39925, at *19 (E.D.N.Y. Mar. 12, 2019) (internal quotations omitted). Here, the DOI's report dated December 2020, relied on by Plaintiff's counsel, refers to the George Floyd protests from May 28, 2020 until June 20, 2020, while the first date of incident alleged in Plaintiff's complaint is July 24, 2020. *See* Ex. A, ¶ 79-81; *see also Rowell v. City of N.Y.*, 16 Civ. 6598 (AJN), 2018 U.S. Dist. LEXIS 168203, at *20 (S.D.N.Y. Sept. 28, 2018) (dismissing complaint where plaintiff did not sufficiently connect Commission to Combat Corruption reports to his specific allegations). Indeed, Plaintiff's complaint also appears to mischaracterize the scope of DOI's report. For example, in paragraph 81, Plaintiff's counsel

cites the proposition that "the force required to carry out a mass arrest was disproportionate to the identified threat" and "placed the burden of potential crime on a wide swath of people who had no apparent connection to that potential criminal activity." DOI report, p. 56. However, the DOI report is referring to the Mott Haven protests in the Bronx on June 4th, 2020, which also occurred prior to July 24, 2020. Similarly, the hearings held by the N.Y.S. Attorney General in paragraph 78 of the complaint, former Mayor de Blasio's May 30, 2020 statement in paragraph 89 of the complaint, and former Police Commissioner Shea's tweet in paragraph 90 of the complaint and his statement in paragraph 91 of the complaint regarding the June 4, 2020 Mott Haven protest all occurred prior to the first date of incident in this case.

Third, Plaintiff's assertion that "Defendants City and NYPD have been the subject of hundreds of federal and state lawsuits and complaints alleging violations of individuals constitutional rights as a result of and failure to train and the policy and/or practice of condoning violations of constitutional rights" to support a purported *Monell* claim is inadequate. *See* Complaint, ¶ 88. "The fact that a civil action was filed and settled voluntarily is not evidence of liability on the part of the City, let alone evidence that the City was on notice of a claimed deficiency in the training it gave to NYPD members. Absent a finding of liability by a judge or jury, the existence of historical civil actions raising similar claims "establishes . . . that other individuals have plausibly alleged that they experienced similar violations of their constitutional rights as [plaintiff] alleges here, not that those violations actually occurred." *Monahan v. City of New York*, 20-CV-2610 (PKC), 2022 U.S. Dist. LEXIS 59124 (S.D.N.Y. March 30, 2022) (citations omitted).

**C.**   **Any *Monell* Discovery Should be Bifurcated Until After the Individual Claims Against City Defendants are Adjudicated**

Under the FRCP, a court "may order a separate trial of one or more separate …claims…" for "convenience, to avoid prejudice, or to expedite and economize." *See* FRCP 42(b). FRCP 42(b) "affords a trial court the discretion to order separate trials where such an order will further convenience, avoid prejudice, or promote efficiency.  Therefore, bifurcation may be appropriate where, for example, the litigation of the first issue might eliminate the need to litigate the second issue, or where one party will be prejudiced by evidence presented against another party." *Aquino*, 2017 U.S. Dist. LEXIS 76402, at *2 (quoting *Amato v. City of Saratoga Springs*, 170 F.3d 311, 316 (2d Cir. 1999) (internal citations omitted)).

Here, the considerations of efficiency and convenience weigh strongly in favor of bifurcating Plaintiff's *Monell* claims. This is a single-plaintiff case involving ten alleged incidents in which City Defendants have motioned to dismiss several claims, and one incident outright, based on the pleadings and on BWC. Most of the proof that would be required at trial would be related to excessive force and, should it survive this motion, IIED. By contrast, to prove *Monell* liability, Plaintiff will have to prove a pattern of conduct by adducing evidence of a considerably greater frequency of culpable incidents, which are not relevant to Plaintiff's underlying claims.

Moreover, besides delaying the individual claims in this case, it would be costly, burdensome, and potentially an unnecessary exercise to litigate the *Monell* claims. To litigate Plaintiff's *Monell* claims, the City of New York will have to locate, review, assemble and produce many thousands of pages of documents, which will necessarily impose an overwhelming burden. Counsel for both sides will have to review and analyze the discovery and additional depositions may be required. Yet, this will be for naught should Plaintiff fail to establish that her constitutional rights were violated as a result of the actions of the individual defendants. Moreover, judicial

economy is best be served by bifurcation because if *Monell* discovery is stayed, it will avoid the need for judicial intervention in what may prove to be a litigious discovery period.

**POINT VIII**

**PLAINTIFF'S STATE LAW CLAIMS ALSO FAIL AS A MATTER OF LAW**

New York General Municipal Law (hereinafter "N.Y. Gen. Mun. Law") § 50-e "requires that a Notice of Claim be filed within ninety days of the incident giving rise to the claim. N.Y. Gen. Mun. Law § 50-e(1). A plaintiff must plead in the complaint that: 1) the Notice of Claim was served; 2) at least thirty days has elapsed since the Notice of Claim was filed and before the complaint was filed; and 3) in that time the defendant has neglected to or refused to adjust or to satisfy the claim." *Horvath v. Daniel*, 423 F. Supp.2d 421, 423 (S.D.N.Y. 2006); N.Y. Gen. Mun. Law § 50-i(1). "Under §50-i, unless the plaintiff has complied with the Notice of Claim requirement the action cannot commence." *Id*. "'Notice of claim requirements are construed strictly by New York state courts.'" *Id*. (internal quotations omitted). The burden is on the plaintiff to demonstrate compliance with the Notice of Claim requirement. *Rattner v. Planning Comm'n of Vill. of Pleasantville*, 156 A.D.2d 521, 548 N.Y.S.2d 943 [**6] (2d Dep't 1989); *Horvath v. Daniel*, 423 F. Supp. 2d 421, 423 (S.D.N.Y. 2006).

Plaintiff failed to comply with the conditions precedent for suit related to the July 28, 2020, July 30, 2020, August 11, 2020, November 17, 2020, and December 11, 2020 incidents and therefore, any N.Y.S. law claims stemming from those incidents should be dismissed. First, Plaintiff does not specifically allege with respect to each incident that she complied with the requirements of the General Municipal Law. Plaintiff only broadly alleges that she complied with the requirements of asserting her claims, which is inaccurate *See* Ex. A, ¶ 6.

Second, and fatally, it does not appear that Plaintiff filed a notice of claim for July 28, 2020, July 30, 2020, August 11, 2020, November 17, 2020, and December 11, 2020. Therefore,

33

Plaintiff's state law claims for July 28, 2020 (assault, battery, false imprisonment, IIED, freedom of speech under the NYS Constitution, and freedom of assembly under the NYS Constitution), July 30, 2020 (IIED, freedom of speech under the NYS Constitution, and freedom of assembly under the NYS Constitution), August 11, 2020 (IIED, freedom of speech under the NYS Constitution, and freedom of assembly under the NYS Constitution), November 17, 2020 (IIED, freedom of speech under the NYS Constitution, and freedom of assembly under the NYS Constitution), and December 11, 2020 (assault, battery, false imprisonment, IIED, freedom of speech under the NYS Constitution, and freedom of assembly under the NYS Constitution) should be dismissed.

**POINT IX**

**A STAY OF DISCOVERY IS WARRANTED**

Pursuant to Rule 26(c) of the Federal Rules of Civil Procedure, a court has discretion to stay discovery "for good cause." "Good cause may be shown where a party has filed a dispositive motion, the stay is for a short period of time, and the opposing party will not be prejudiced by the stay." *Boelter v. Hearst Communs., Inc.*, No. 15-CV-03934 (AT), 2016 U.S. Dist. LEXIS 12322, at *13 (S.D.N.Y. Jan. 28, 2016) (quoting *Spencer Trask Software & Info. Servs., LLC v. RPost Int'l Ltd.*, No. 02-CV-01276 (PKL), 206 F.R.D. 367, 368, 2002 U.S. Dist. LEXIS 6021 at 368 (S.D.N.Y. Apr. 8, 2002) (internal quotations omitted)). In determining whether to stay discovery, the Court should consider: "1) whether the defendant has made a strong showing that the plaintiff's claim is unmeritorious; 2) the breadth of discovery and the burden of responding to it; and 3) the risk of unfair prejudice to the party opposing the stay." *Kanowitz v. Broadridge Fin. Solutions Inc.*, No. 13-CV-649 (DRH) (AKT), 2014 LEXIS 46518 at *15-*16 (E.D.N.Y. Mar. 31, 2014). Courts in this Circuit "have held that a stay of discovery is appropriate where the motion appears to have substantial grounds or[,] stated another way, does not appear to be without foundation in law."

34

*Johnson v. N.Y. Univ. Sch. of Educ.*, 205 F.R.D. 433, 434 (S.D.N.Y. 2002) (internal citations and quotations omitted).

As set forth herein, all claims in the FAC pertaining to the July 28, 2020, September 29, 2020, and October 25, 2020 incidents fail as a matter of law. Thus, defendants' anticipated motion, if successful, would dispose of every claim for those three incidents. The disposition of these incidents may also potentially affect plaintiff's purported *Monell* claim. Plaintiff would not be prejudiced by said stay as the stay of discovery would only last for the duration of the Court's consideration of the motion. Furthermore, in light of the fully dispositive nature of defendants' anticipated motion as to these three incidents, engaging in discovery on said incidents would be unduly burdensome on defendants, and a waste of the Court's and the parties' resources. Accordingly, all discovery regarding these incidents and any *Monell*-related discovery (should the Court not grant bifurcation, *see* Point VII, *supra*) should be stayed pending the resolution of the instant motion.

## CONCLUSION

For the foregoing reasons, City Defendants respectfully request that this Court grant their motion to dismiss pursuant to FRCP 12(b)(6), dismiss the aforementioned claims against them, with prejudice, and for such other and further relief as the Court deems proper and just.

Dated: August 15, 2022
      New York, N.Y.

                          HON. SYLVIA O. HINDS-RADIX
                          Corporation Counsel of the City of New York
                          Attorney for City Defendants
                          100 Church Street, 3rd Floor
                          New York, N.Y. 10007

            By:          *KellyAnne Holohan [s]*
                          KellyAnne Holohan
                          *Senior Counsel*
                          Tel: (212) 356-2249
                          E-mail: kholohan@law.nyc.gov

                         *Felix De Jesus [s]*
                          Felix De Jesus
                          *Assistant Corporation Counsel*
                          Tel: (212) 356-2377
                          E-mail: felixdej@law.nyc.gov

cc:    **BY ECF**
        *All counsel of Record*